UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, ANA ROMAN, MIGUEL CEBALLOS ALVAREZ, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:15-cv-00817-TWP-MJD |
| vs. | ) ) | |
| MH LEASING, LLC, SHILOH ESTATES, FR COMMUNITY, LLC, FR CHINOOK, LLC, PAMELA ZIEMER, FR MH PARKS LLC, FR COMMUNITIES LLLP, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on cross-motions for summary judgment: Motion for Summary Judgment filed by Defendants [Dkt. 83] and Motion for Partial Summary Judgment by Plaintiffs [Dkt. 86.] On April 25, 2017, District Judge Tanya Walton Pratt designated the undersigned Magistrate Judge to issue a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 103.] For the reasons set forth below, the Magistrate Judge recommends Defendants' Motion be **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's Motion be **DENIED**.

I.    <u>**Background**</u>

This is an action for housing discrimination brought by Plaintiffs Fair Housing Center of Central Indiana ("FHCCI"), Ana Roman ("Roman") and Miguel Ceballos Alvarez ("Alvarez").

The FHCCI is an Indiana non-profit organization whose mission is to foster diversity and equal opportunity in housing through education and enforcement of housing laws. Plaintiffs allege Defendants[1] (entities related to the manufactured home community in which Roman and Alvarez lived and its community manager) discriminated against Roman and Alvarez on the basis of their national origin and other residents on the basis of their familial status in violation of the Fair Housing Act ("FHA") and 42 U.S.C. §1981.[2]  FHCCI further contends Defendants violated the FHA by discriminating against disabled tenants. Defendants filed a motion for summary judgment seeking dismissal of all claims as a matter of law. Plaintiffs filed a cross motion for summary judgment seeking a liability finding against Defendants on one of its FHA claims.

When confronting cross motions for summary judgment, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Indiana Civil Liberties Union Found. Inc. v. Indiana Sec'y of State*, No. 1:15-cv-1356-SEB-DML, 2017 WL 264538, at *2 (S.D. Ind. Jan. 19, 2017). Here, the Court has considered the parties' respective memoranda and the exhibits attached thereto and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective nonmovant.[3]

Shiloh Estates (formerly Shortridge Village) is a manufactured housing community in Indianapolis, Indiana. Defendant Pamela Ziemer ("Ziemer") was the community manager of Shiloh Estates from June 1, 2011, through March 11, 2014. Prior to this, the community managers were Wayne and Vickie Pavey. Roman and Alvarez lived at Shiloh Estates from 2004

---

[1] Shiloh Estates, FR Communities, LLP, FR Chinook, LLC; FR MH Parks LLC, and Pamela Ziemer. Plaintiffs concede Defendant MH Leasing, LLC, should be dismissed from the case. [Dkt. 91 at 1.]

[2] Plaintiffs concede their state law claims of negligence and harassment as well as their conspiracy claim under 42 U.S.C. §1985(3) should be dismissed. [Dkt. 91 at 12.]

[3] To the extent Plaintiffs have submitted evidence that is inadmissible hearsay, such evidence was not relied upon by the Court in resolving this Motion.

until May 2013. Roman and Alvarez owned their trailer and leased their lot from Shiloh Estates. Roman believed Ziemer treated her family "like trash." [Dkt. 85-31 at 5.] For example, when Roman went to the office to pay the lot rent, Ziemer ignored her and did not greet her with respect the way she greeted other residents. Roman testified, "[Ziemer] took the time to talk to all the Americans." *Id*. Roman also testified that Ziemer repeated called her family "ignorant." [Dkt. 92-19 at 14.]

Roman asserts Ziemer treated her family differently than the "American" families: "She would put papers that would say that we needed to clean, and everything was clean . . . We had a few things outside insignificant while other have big things, and she wouldn't tell them anything. And to us, for any reason always, she was telling us to clean, to this, to that . . . When there were parties in the community, she would never invite us. She would invite the others. When there were yard sales, community yard sales, she would invite everybody except us. . . When the snow time came, they would put up the shovel from the truck so it wouldn't clean the area where we lived." [Dkt. 85-31 at 8.]

Once or twice a month, A-Mass Towing would drive the neighborhood and tag vehicles that appeared to be inoperable or had expired license plates. A-Mass tagged and towed multiple vehicles every month at Shiloh Estates. [Dkt. 85-47 at 9-105.] After tagging a vehicle, A-Mass would contact Ziemer to seek approval. [Dkt. 92-24 at 24.] Occasionally, residents whose vehicles had been tagged would contact Ziemer and agree to take care of the vehicle's issue and Ziemer would cancel the tow. *Id*. In November 2012, Roman and Alvarez's car was tagged for towing because it was parked illegally. [Dkt. 85-47 at 53.] The next day Ziemer approved the towing by returning the Tag List fax to A-Mass and A-Mass towed the vehicle. [Dkt. 85-47 at 52.] In March 2013, A-Mass tagged two of Roman and Alvarez's vehicles for towing. Both

vehicles had expired license plates and one had a flat tire. [Dkt. 92-3 at 2.] Ziemer instructed A-Mass not to tow either vehicle because the family agreed to remove one vehicle and renew the license plate on the other. [*Id.*; Dkt. 92-24 at 13.]

In September 2011, Sandy Brock[4] received a phone call from Vickie Pavey's daughter, who is a resident of Shiloh Estates, citing various concerns within the community including potential discrimination by Ziemer against a Hispanic family. Brock drafted a memorandum memorializing Pavey's concerns and forwarded it to Adam McNeil, Ziemer's supervisor. [Dkt. 92-6 at 2.] On October 7, 2011, McNeil received an anonymous email identifying the same concerns about Shiloh Estates and Ziemer. [Dkt. 92-7 at 2-3.]

In January of 2013, because of the "constant problems" they experienced with Ziemer, Roman and Alvarez put their trailer on the market for sale. [Dkt. 92-19 at 6.] At least two Hispanic potential buyers contacted Alvarez, but decided not to buy the trailer because Ziemer was rude to them and told them Roman and Alvarez were behind on rent. [Dkt. 92-19 at 21.] In May of 2013, Roman lost her job cleaning houses. [Dkt. 85-31 at 23.] Later that month, the couple moved in with their son, Pedro, leaving their trailer at Shiloh Estates. *Id.* At some point prior to moving, Roman and Alvarez stopped making rent payments for their lot. [Dkt. 85-31 at 21.] On May 15, 2013, Ziemer served them with a Notice to Pay Rent or Quit, warning Roman and Alvarez that the community would begin eviction proceedings if they did not pay their rent. [Dkt. 85-23 at 2.] Shiloh Estates filed for eviction in small claims court of Warren Township, Indiana, on June 11, 2013. [Dkt. 85-24 at 2.]  The court awarded possession of the trailer to FR Chinook LLC on September 19, 2013. [Dkt. 85-45 at 2.]

---

[4] The Court was unable to discern Ms. Brock's title, however, she did serve as Shiloh Estates' representative in the Fed. R. Civ. P. 30(b)(6) deposition.

In July 2013, Roman contacted the FHCCI. Christina Nape, a Fair Housing Specialist, spoke with Roman and later her daughter, Ceyla Ceballos. Roman and Ceballos told Nape that Ziemer was "racist" and reported the following incidents they believed were motivated by discrimination:

- Ziemer was rude to the family and mocked Roman because she did not speak English.

- Ziemer had Roman and Alvarez's car towed then called them "ignorant" for failing to park in the proper location.

- The Shiloh Estates maintenance staff did not salt the family's driveway or sidewalk or mow the grass around their car.

- Ziemer's discriminatory demeanor intimidated potential buyers for their trailer who were Hispanic.

[Dkt. 85-7 at 1-3.]

The FHCCI conducted two rounds of test visits at Shiloh Estates in an effort to determine whether Roman's allegations could be substantiated. Two individuals, one Hispanic and one Caucasian, were given similar household profiles and credit scores and contacted Shiloh Estates to inquire about available rental units. [Dkt. 85-38 at 8-9.] Both testers interacted with Becky Lawrence, a sales assistant at Shiloh. The Hispanic tester requested an application and was told she would need a social security number to apply. The Caucasian tester did not request an application and was not told she would need a social security number to apply. Lawrence told the Hispanic tester about two available units, one for $659 per month and one for $700 per month. Lawrence told the Caucasian tester about three units, one for $675 per month and two for $697 per month. [Dkt. 85-8 at 2-8.] The second round of testing yielded similar results. [Dkt. 85-9 at 2-7.]

With the assistance of the FHCCI, Roman and Alvarez filed a housing discrimination complaint with the Indiana Civil Rights Commission ("ICRC") on May 1, 2014. [Dkt. 85-4 at 2-4.] The ICRC conducted an investigation and issued a "no cause" finding on February 2, 2015. [Dkt. 85-5 at 2-5.] Plaintiffs filed their Complaint on May 22, 2015.

Additional facts will be discussed below, as necessary.

## II.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249. Stated differently, only disputes over material facts -- i.e., "facts that might affect the outcome of the suit under the governing law" -- will preclude the entry of summary judgment. *Id.* Disputes over immaterial or irrelevant facts will not. *Id.* at 247-48. When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255.

## III.    **Analysis**

After Plaintiffs' concession of the claims noted above, the following claims remain in this litigation: housing discrimination in violation of §§ 3604(b), 3617, 3604(c), 3604(f)(3)(A), and

3604(f)(3)(B) of the FHA and discrimination based on race, color or ethnicity in violation of 42 U.S.C. §1981. Defendants seek summary judgment on each of these claims. Plaintiffs seek summary judgment on their §3604(c) claim.

Defendants also assert FR Communities LLLP should be dismissed as a defendant for all claims because it has no relationship to Plaintiffs. FR Communities LLLP does not employ anyone at Shiloh Estates or own any real estate at Shiloh Estates. Plaintiffs contend the entity should remain in the lawsuit because one of its owners, John Strohm, "was instrumental in the adoption of the Community Rules and Regulations" which Plaintiffs assert are discriminatory on their face in violation of 42 U.S.C. §3604(c). In the absence of any evidence that FR Communities LLLP played any role in enforcing the allegedly discriminatory rules, the Magistrate Judge recommends the entity be **DISMISSED** out of this lawsuit.

The Court now turns to the merits of each of Plaintiffs' claims.

### A. 42 U.S.C. §3604(b) and §3617

At the outset of this discussion, the Court must first address the manner in which these two claims are analyzed in the parties' briefing. Defendants first reference §3604(b) and correctly quote the statute; however, Defendants then proceed to evaluate the claim as a "hostile environment" claim. [Dkt. 84 at 17.] Perhaps this is because Plaintiffs' Amended Complaint asserts that §3604(b) "makes it unlawful to create or maintain a hostile living environment based on these protected classifications." [Dkt. 37 at ¶9.] Both parties misinterpret the scope of protection offered by this particular section of the FHA.

Section 3604(b) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Once

interpreted to only prohibit certain pre-sale actions (and, thus, not be applicable to post-sale discrimination such as that alleged here), the Seventh Circuit now holds that this provision of the FHA is applicable to post-sale discrimination *only* in two certain limited circumstances: (1) in cases of actual or constructive eviction; and (2) where discriminatory enforcement of the rules imposed by homeowners' association serves to restrict owners' rights. *See Bloch v. Frischholz*, 587 F.3d 771, 779-80 (7th Cir. 2009). Consequently, this claim (and corresponding motion for summary judgment) should focus on either the "eviction" (either actual or constructive) of Roman and Alvarez or on allegedly discriminatory enforcement of rules at Shiloh Estates. Instead, both parties discuss evidence of harassment more akin to that which should be discussed in terms of the §3617 claim. This is where the Court will begin its analysis.

Section 3617 provides an independent post-sale discrimination claim that is more broadly prohibitive of conduct than the actual deprivation of the rights described in §3604(b). *Bloch*, 587 F.3d at 782. ("Though §3604 requires that the plaintiffs' dwelling be made truly unavailable, or that defendants deprived plaintiffs of their privilege to inhabit their dwelling, the text of §3617 is not so limited.") For example, HUD regulation 24 C.F.R. section 100.400(c)(2) protects against discrimination by prohibiting "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of the national origin* . . . of such persons, or of visitors or associates of such persons." *Id.* (emphasis added). Also relevant to claims brought under §3617 is HUD regulation 24 C.F.R. section 100.400(c)(2), which prohibits "interfering with persons in their *enjoyment of a dwelling because of the national origin* . . . of such persons." *Id.* at 782 (emphasis added).

Defendants assert that while Plaintiffs have offered evidence that residents had various complaints about being treated poorly by Shiloh Estates, none of the evidence links the poor

treatment to discrimination based upon their national origin. Equally poor treatment, Defendants maintain, does not support an FHA claim of discrimination. [Dkt. 84 at 23.] In other words, if Defendants treated everyone poorly, it is less likely Defendants' actions against Roman and Alvarez were because of their national origin.

To prevail on a §3617 claim, a plaintiff must show that (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate. *Bloch*, 587 F.3d at 783. Roman and Alvarez clearly meet the first two elements: they are Hispanic and they lived in Shiloh Estates where they leased a lot for their mobile home. The questions before the Court, therefore, are (1) whether the severity of the harassment asserted by Plaintiffs rises to the level of actionable under the FHA; and (2) whether Defendants were motivated by discriminatory intent.

"Interference" is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of harassment, invidiously motivated." *Halprin,* 388 F.3d at 330. The Seventh Circuit evaluates intentional discrimination under §3617 in the same manner in which it evaluates discrimination claims in the employment context. *East–Miller v. Lake County Highway Dept.,* 421 F.3d 558, 563 (7th Cir. 2005). To that end, to defeat the motion for summary judgment, Plaintiffs must produce specific facts from which a reasonable juror could infer that Defendants discriminated against Roman and Alvarez because they are Hispanic. *See Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 766 (7th Cir. 2016).

As both parties noted, there are few recent Seventh Circuit opinions addressing housing discrimination such as that alleged here. In *Bloch v. Frischholz,* plaintiffs were a Jewish couple

who owned a condominium. The Blochs affixed a mezuzot (a small box housing a scroll inscribed with passages from the Torah) to the exterior doorpost of their condominium as part of their Jewish faith. *Bloch*, 587 F.3d at 772-73.  For almost 30 years, the Blochs displayed the mezuzot, without objection, until the condominium association began enforcing a rule that prohibited items in the common hallway. After renovating the hallways, the association began removing and confiscating the mezuzot, along with other items in the hallway such as wreaths, crucifixes, political posters, and sports pennants. *Id.* The Blochs attempted to explain to the association the religious significance of the mezuzot, but the association repeatedly rejected their explanations and continued to remove it, most significantly during the seven-day Shivah following Mr. Bloch's death. *Bloch*, 587 F.3d at 774. The Bloch's also produced evidence of religious animus by board members such as scheduling meetings on Friday nights knowing the Bloch's could not attend and calling Ms. Bloch a "racist" and a "liar." *Id.* at 780. The Court concluded that it is "the combination of these facts and inferences, rather than any single one, that pushes this case beyond summary judgment." *Bloch*, 587 F.3d at 786-87.]

Similarly, in *Halprin v. Prairie Single Family Homes*, the president of the homeowners' association vandalized plaintiffs' property by damaging trees, cutting down strings of holiday lights, and writing a derogatory term for Jewish people on the wall of plaintiffs' property. *Halprin*, 388 F.3d 327, 328 (7th Cir. 2004). To thwart the plaintiffs' efforts to investigate the vandalism, the president then destroyed minutes of board meetings and erased a tape recording of a meeting at which he had threatened to "make an example" of plaintiffs. *Id.* In reversing the district court's dismissal of the §3617 claim on a motion to dismiss, the Court found the conduct alleged to be a "pattern of harassment, invidiously motivated" that exceeded a quarrel among neighbors or an isolated act of harassment committed by a landlord. *Halprin*, 388 F.3d at 330.

Here, whether the conduct alleged is "threatening, intimidating or interfering" within the meaning of the statute is a closer call. No single piece of evidence in this case is as damaging as the repeated removal of the mezuzot in *Bloch*. The towing of Roman and Alvarez's car is perhaps the most severe action alleged by Plaintiffs. However, Defendants produced evidence that many cars are tagged and towed each month and on one occasion Ziemer advised A-Mass *not* to tow their vehicles because the family had promised to renew their registration. This evidence decreases the likelihood that Ziemer was targeting Roman and Alvarez because she disliked Hispanics. Plaintiffs also allege that Ziemer required Hispanic families to sign new leases and advised them they would need a green card and social security number to live in the community. Defendants produced contradictory evidence that all families were required to sign new leases to reflect the change from Shortridge to Shiloh Estates, and this occurred in 2010, *before* Ziemer was hired. [Dkt. 85-20; Dkt. 92-1]

However, Plaintiffs also produced evidence from Roman and Alvarez and other residents that Ziemer disliked Hispanics and consistently treated them differently than Caucasian residents and that the corporate office had notice of this as early as 2011. [Dkt. 92-21 at 2-4; Dkt. 92-7 at 3.]  Tim Walker testified that Ziemer said Hispanics were "dirty and stupid" and called them "illegal spics." [Dkt. 92-18 at 28-29.] Greta Willis testified that Ziemer referred to her mixed-race nephew as an "undesirable" and that Ziemer told a pool monitor not to allow the "little black children" (Willis' grandchildren) in the pool. [Dkt. 92-22 at 12-13.] Roman testified that Ziemer publicly blamed the "niggers and Hispanics" for stealing rent checks from the drop box and called her family "ignorant." [Dkt. 92-19 at 14.] Roman further alleged that her family was treated less favorably than the Caucasian families at Shiloh Estates in terms of lot maintenance and invitations to social events and that Ziemer's animus toward Hispanics thwarted the sale of

11

their trailer. Defendants' corporate office had received two complaints that Ziemer was requiring Hispanic potential residents to provide social security numbers to obtain a lease application, which was consistent with the first test performed by the FHCCI.

Defendants dispute these allegations, but assert that even if the allegations are true, they are not severe or pervasive enough to constitute a §3617 violation. Again, this is a closer call than in *Bloch* or *Halprin*, but the Court find that Plaintiffs have demonstrated enough potentially discriminatory conduct to defeat summary judgment. These allegations, if proven, exceed isolated incidents of harassment by a landlord against a tenant. In its briefing on this claim, Defendants seem to ask the Court to view the designated evidence in a light more favorable to themselves or to weigh the conflicting designated evidence. However, the well-established standard for summary judgment is that the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor," *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted), and does not weigh the evidence. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

Plaintiffs have produced evidence of a pattern of harassment by Ziemer and animus toward Hispanics from which a reasonable juror could infer that her negative treatment of Roman and Alvarez, as well as other residents, was sufficiently severe to be actionable under the FHA and was motivated by discrimination. Consequently, based on the analysis above, the Magistrate Judge recommends Defendants' motion for summary judgment as to Plaintiffs' §3617 claim be **DENIED**.

The Court now turns to Plaintiffs' §3604(b) claim. Plaintiffs characterize this claim as one for "hostile living environment," but as the Court explained above this characterization is more appropriate for their §3617 claim. Section 3604(b) addresses a *deprivation of rights* that

12

requires Plaintiffs to have left the property. *See Bloch*, 587 F.3d at 779. In their Amended

Complaint, Plaintiffs allege: "In January 2013, Mr. [Alvarez] placed his trailer up for sale in an

attempt to move out of the community, away from the discrimination. However, after meeting

Ms. Ziemer to receive information and to apply to reside at Shiloh Estates, each prospective

Hispanic buyer decided against purchasing the home because they felt unwelcome as Latinos in

the community. . . . Due to the discrimination and the impact of it upon Ms. Roman's health, the

family felt no choice but to vacate the mobile home and to move away." [Dkt. 37 at ¶47-48.]

These allegations support a §3604(b) claim under the theory of constructive eviction, yet neither

party addresses the claim in that manner.

It is reasonable to assume that just as a court is not required to "scour the record looking

for factual disputes," it also is not required to make Defendants' argument for them on summary

judgment. *Waldridge v. American Hoechst Corp.*, 24 F.3d 818, 922 (7th Cir. 1994). "A court

need not make the lawyer's case." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.

1995). As Defendant set forth no argument against Plaintiffs' claim that Defendants unlawfully

deprived Roman and Alvarez of their right to inhabit their home under §3604(b), the Magistrate

Judge recommends Defendants' motion be **DENIED** as to this claim as well.

**B.  42 U.S.C. §3604(c)**

Shiloh Estates, like many rental communities, has community rules and regulations that

residents agree to observe and comply with as a term of their lease. These rules delineate lease

terms such as when rent is due and how it shall be paid, how the manufactured home shall be

situated on the lot, and how the lot site shall be maintained. There are also rules governing the

conduct of residents and their families such as the following:

- You are fully responsible for your children and your pets. You will also be
  responsible for your guest's conduct. Parents: it is your responsibility to make

13

sure your children are not playing in the streets. There is a 10:00 p.m. curfew for children unless accompanied by an adult.

- Unoccupied lots are the property of the community and are not considered common areas for the use of other residents. Children are prohibited from playing on unoccupied lots.

- You must be 18 years of age, able to swim and be a registered resident of the community to use the pool unsupervised.

[Dkt. 88-2 at 3-4.]

Plaintiffs assert these rules are facially discriminatory based on familial status (and, thus, violate §3604(c) of the FHA) because "only children cannot stay out late or play outside unsupervised after curfew; only children are limited in their use of the pool . . ." [Dkt. 87 at 6.] Since these rules treat children differently than adults, Plaintiffs assert, they are discriminatory. Defendants maintain the rules serve the legitimate, non-discriminatory purpose of protecting the safety of its residents, protecting Shiloh Estates from liability for injuries, and preserving the quality of unoccupied lots. [Dkt. 93 at 12.]

Section 3604(c) makes it illegal to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." Actions prohibited under §3604(c) include using words or phrases which convey that dwellings are not available to a particular group of persons because of familial status and expressing to prospective renters or any other persons a preference or a limitation on any renter because of familial status. 24 C.F.R. § 100.75(c)(1)-(2) (2006).

Citing to no authority from the Seventh Circuit, or even cases from district courts therein, Plaintiffs assert not only that §3604(c) applies to these community rules, but that the rules are

14

facially discriminatory and Plaintiffs are entitled to judgment as a matter of law. While the Seventh Circuit has not applied this section of the FHA to community rules, the court has heard §3604 cases that involve the more common scenario of statements made by a defendant that could indicate a prohibited preference, such as renters without children. To determine whether such a statement indicates impermissible discrimination on the basis of familial status in violation of §3604(c), the Seventh Circuit employs an "ordinary listener" standard. *See Jancik v. Dept. of Housing and Urban Dev.,* 44 F.3d 553, 556 (7th Cir. 1995). The inquiry under this objective standard is whether the alleged statement would suggest to an "ordinary listener" that a person with a particular familial status is preferred or disfavored for the housing in question. *Id.* The ordinary listener "is neither the most suspicious nor the most insensitive of our citizenry." *Jancik,* 44 F.3d at 556 n. 4.

In *Jancik,* the Seventh Circuit found a defendant's statement that "he did not want any children in the home" would suggest to an "ordinary listener" a preference against families. *Jancik,* 44 F.3d at 556. Similarly, in *White v. U.S. Dept. of Housing and Urban Dev.*, the Court found that when a defendant refused to rent an apartment to the plaintiff upon learning she was a single mother of two children, despite not having any information about the plaintiff's financial status, an "ordinary listener" would find the defendant "assessed White's ability to pay her rent based upon her familial status, not on her financial situation." *White,* 475 F.3d 898, 906 (7th Cir. 2007).

Here, Plaintiffs assert that the "ordinary reader" would find Shiloh Estates' rules prohibiting children from playing in the streets or prohibiting those under age 18 from using the pool unsupervised to express a preference against families with children. [Dkt. 101 at 2.] The

Court declines to stretch the Seventh Circuit's holdings in *Jancik* and *White* that far.[5] An ordinary reader would find that these rules are typical safety rules common in communities throughout the district. Variations of these rules may be more stringent in some communities; perhaps less stringent in others. However, the Court finds the objective, ordinary reading of these rules does not indicate a preference against families with children. As there is no evidence that Defendants violated §3604(c), the Magistrate Judge recommends Defendants' motion as to this claim be **GRANTED** and Plaintiffs' motion as to this claim be **DENIED**.

### C.  42 U.S.C. §3604(f)(3)(A) and (B)

During the course of its investigation into Roman and Alvarez's claims of discrimination based upon national origin, FHCCI asserts that it uncovered evidence of discrimination against disabled residents by Defendants. Specifically, FHCCI asserts that Defendants denied disabled residents reasonable accommodations such as accessible ramps and early termination of their lease.

Section 3604(f) makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap. 42 U.S.C. §3406(f)(1). Discrimination under this section includes:

(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling;

---

[5] The Court likewise declines Plaintiffs' invitation to apply the more stringent "least restrictive means" test applied by some California district courts.

42 U.S.C. §3604(f)(3)(A), (B).

Plaintiffs' §3604(f) claims encompass the following facts construed in the light most favorable to Plaintiffs:

- Barbara Jean Romine, a disabled resident with mobility impairments, used a small shopping cart to bring home groceries from the Wal-Mart near her home. Because her physical condition made it difficult to maneuver the cart into her home, Romine left the shopping cart on her front porch. Romine's son-in-law, Tim Walker, testified that Ziemer "harassed" Romine about storing the cart on the porch because it violated Shiloh's rules. There is no evidence that an accommodation request was made on Ms. Romine's behalf, and Walker testified that Romine continued to store the cart on her porch. [Dkt. 92-18 at 5.]

- Greta Willis, a Shiloh resident whose mother lives with her, completed a Resident Complaint Form on April 6, 2014. Willis noted that she "spoke with [Ziemer] back in February about installing a handicap ramp due to my mom being in a wheelchair." [Dkt. 85-18 at 2.] Shiloh had terminated Ziemer's employment in March of 2014. On May 13, 2014, Willis' family signed an agreement with Shiloh Estates wherein Shiloh would construct the wheelchair ramp and pay for one-half of its cost. [Dkt. 85-18 at 3.] The Willis family paid their half to Shiloh in $50 per month installments for 24 months. *Id*. The ramp was built in May of 2014.

- Former Shiloh resident Jackie Murray testified that she had one telephone conversation with Ziemer about installing a wheelchair ramp about a year after she moved into the community.

    A:    I remember asking if we could build a ramp, and she said I had to build it from the back. I told them that that wouldn't do me any good. She said that I couldn't build it from the front.

    Q:    Did you explain to her why you wanted it in the front:

    A:    She knew.

    Q:    But you didn't talk to her about it; correct?

    A:    She knew I had paralysis . . .

                                    ***

    Q:    But you didn't explain to her or you didn't talk with her about why you wanted the ramp by your front door rather than your back door?

> A:    I don't remember that I specifically said. I just probably – I don't remember. I mean, I took for granted that she knew that I had a stroke and that I used the front door. Why would I try to walk through the grass?

[Dkt. 85-37 at 11.]

Murray never made another request for a ramp and moved out of Shiloh Estates in October 2014.

- Former Shiloh resident Carol Willis requested in 2014 to terminate her lot lease 23 months early to move closer to family during treatment for cancer. Per the terms of the Lot Agreement, Shiloh terminated the lease in exchange for three months' rent. [Dkt. 100-6 at 2-3.]

Defendants assert that none of these instances constitutes a refusal to accommodate these individuals, therefore do not violate the FHA.  The Court agrees. The applicable provisions prohibit the "refusal to permit" modification of the premises or the "refusal to make reasonable accommodations" in rules or procedures to allow the individual "to use and enjoy a dwelling." 42 U.S.C. §3604(f)(3)(A), (B). Ms. Romine's son-in-law reported that she was "harassed" by Ziemer about storing the shopping car on her front porch, but none of the Defendants prohibited Ms. Romine from continuing to store it there. Greta Willis believes it took Shiloh Estates too long (about four months) to approve and build a wheelchair ramp, but the ramp was approved and built and Shiloh Estates paid for half of its construction even though it was not required to do so. Ms. Murray was told Shiloh Estates could build a wheelchair ramp to the back entrance of her home, but she wanted the ramp at the front door. Ms. Murray admits she did not explain to Ziemer why she wanted the ramp at the front door and she never inquired about a ramp again. Finally, Carol Willis wanted to be released (presumably without charge) from the final 23 months of her Lot Agreement in order to move closer to her family during her cancer treatment. As set forth in the Agreement, Shiloh Estates released her from the contract with a payment of three months lot rent.

18

On none of these occasions did Shiloh Estates *refuse* to accommodate the individuals. "The responsibility to offer a reasonable accommodation does not mean that a landlord must do everything possible to accommodate a disabled person." *Clabault v. Shodeen Mgmt.,* 2006 WL 1371460, at *2 (N.D. Ill. May 15, 2006). Moreover, the burden is on Plaintiffs to show that the accommodation they seek is reasonable on its face. *Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775, 783 (7th Cir. 2002). At best, FHCCI has shown that Ms. Murray and Carol Willis were not provided with the precise accommodation they sought. Plaintiff makes no effort to establish that an alternative accommodation was reasonable or required under the circumstances. As there is no evidence that Defendants violated §3604(f)(3)(A)or (B) by refusing to accommodate, the Magistrate Judge recommends Defendants' motion for summary judgment be **GRANTED** with respect to these claims.

### D.  42 U.S.C. §1981

Roman and Alvarez allege a race discrimination claim based upon §1981, which prohibits racial discrimination in the making and enforcement of contracts. Section 1981 provides that "'[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, as is enjoyed by white citizens ....' and defines making and enforcing of contracts as 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 756 (7th Cir. 2006) (quoting 42 U.S.C. §1981)). To state a claim under §1981, Plaintiffs must allege facts supporting the following propositions: (1) they are members of a racial minority; (2) Defendants intended to discriminate against them based on race; and (3) the discrimination deprived Plaintiffs of their right to make and enforce a contract. *See Pourghoraishi,* 449 F.3d at 756.

Defendants assert the §1981 claim must fail because Roman and Alvarez moved out of Shiloh Estates because they could no longer afford the lot rent, not because of interference with their contract rights. Defendants further argue that Plaintiffs have never alleged their eviction (actual or constructive) was discriminatory or unlawful. This is incorrect. As discussed above, Plaintiffs clearly allege in the Amended Complaint that the family felt it had no choice but to move to get away from the discrimination. Defendants may dispute this allegation, but that factual dispute should be resolved by the jury, not by this Court on summary judgment.

Additionally, as discussed in terms of the FHA claims above, Roman and Alvarez have established a material issue of fact as to whether Defendants' actions were racially motivated. Based upon the evidence presented, a reasonable juror could conclude that Defendants discriminated against Roman and Alvarez because of their race or national origin, depriving them of their rights under the Lot Agreement. Consequently, the Magistrate Judge recommends Defendants' motion for summary judgment as to the §1981 claim be **DENIED**.

### IV.    <u>Conclusion</u>

Based upon foregoing, the Magistrate Judge recommends Plaintiffs' *Partial Motion for Summary Judgment* [Dkt. 86] be **DENIED** and Defendant's Motion be **GRANTED IN PART** and **DENIED IN PART** as follows:

- **DENIED** as to Plaintiffs' claim under 42 U.S.C. §3604(b) against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC;

- **DENIED** as to Plaintiffs' claim under 42 U.S.C. §3617 against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC;

- **GRANTED** as to Plaintiffs' claim under 42 U.S.C. §3604(c) against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC;

- **GRANTED** as to Plaintiffs' claim under 42 U.S.C. §3604(f)(3)(A) against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC;

- **GRANTED** as to Plaintiffs' claim under 42 U.S.C. §3604(f)(3)(B) against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC;

- **DENIED** as to Plaintiffs Roman and Alvarez's claim under 42 U.S.C. §1981 against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC.

Additionally, the Magistrate Judge recommends Defendants MH Leasing, LLC, and FR Communities, LLLP, and Plaintiffs' state law claims of negligence and harassment as well as their conspiracy claim under 42 U.S.C. §1985(3) be **DISMISSED**.

The following claims remain for trial, currently set for July 5, 2017:

- Plaintiffs' claim under 42 U.S.C. §3604(b) against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC;

- Plaintiffs' claim under 42 U.S.C. §3617 against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC;

- Plaintiffs Roman and Alvarez's claim under 42 U.S.C. §1981 against Shiloh Estates, FR Chinook, LLC, Pamela Ziemer, FR Community, LLC, and FR MH Parks, LLC.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  11 MAY 2017

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

21

Distribution:

Christopher E. Clark
GOODIN ABERNATHY LLP
cclark@goodinabernathy.com

James R. Browne, Jr.
GOODIN ABERNATHY LLP
jbrowne@goodinabernathy.com

Amanda C. Couture
OGLETREE, DEAKINS, NASH, SMOAK & STEWART PC (Indianapolis)
amanda.couture@ogletreedeakins.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART PC (Indianapolis)
kenneth.siepman@odnss.com